## ALBIN *vs.* PRESBY.

Where a traveller, after arriving at an inn, placed his loaded wagon under an open shed, near the highway, and made no request to the innkeeper to take the custody of it, and goods were stolen from it in the night ; it was *held* that the innkeeper was not liable for the loss, notwithstanding it was usual to place loaded teams in that place.

CASE, to recover the value of goods lost from the inn of the defendant. The declaration alleged that the defendant, at the time of the loss, was the keeper of a common inn in Dunstable, and that the plaintiff was received into said inn as a traveller, and brought into said inn the goods in question, which goods remained in said inn until the time of the loss, during all which time the plaintiff abided there as a traveller ; and that said goods were not kept by said defendant safely, and without diminution or loss, but on the contrary the same were taken and carried away by some person or persons to the plaintiff unknown, and so were wholly lost to the plaintiff.

It appeared in evidence, that the plaintiff came to the inn kept by the defendant, with a team of several horses, and a wagon, with some merchandise in it, consisting of bales of ticking, carpeting and tow cloth ; and was received and entertained for the night. There was a canvass covering thrown loosely in the wagon, which covered about one half of it. Upon his first arriving at the inn, the wagon, with its loading, was left by the plaintiff in the yard of the defendant, which is open to the highway. The horses were taken from the wagon by the defendant's servants and the plaintiff, and put in the stable. A short time afterwards, the plaintiff took one of his horses, and drew his wagon under an open shed, situated within a few feet of the highway, remarking that it looked likely to rain before morning. It was the place where the loaded wagons of guests were usually placed, when they were put under shelter at all.

The wagon remained under this shed through the night, and in the morning the carpeting and tow cloth were not to be found, having been stolen. There was no proof of negligence on the part of the defendant, other than what results from the foregoing facts.

A verdict was taken, by consent, for the plaintiff. Judgment to be rendered thereon, or the plaintiff to become nonsuit, according to the opinion of this court upon the foregoing case.

*C. G. Atherton*, for the defendant, cited *Story on Bailment* 313.

*A. F.* and *G. Y. Sawyer*, and *Farley*, for the plaintiff. Innkeepers are answerable for the goods of the guest, if brought *infra hospitium.* 3 *Bac. Abr.* 181.

Goods may be within the inn, and the keeper not liable. 1 *Starkie's Rep.* 249, *Farnsworth* vs. *Packwood.*

Goods may be *infra hospitium,* and not within the walls of the inn. If committed to the care of the innkeeper they are *infra hospitium.* 8 *Coke* 32, *Cayle's case ;* 8 *Barn. & Cres.* 9, *Richmond* vs. *Smith ;* 1 *Adolph. & Ellis* 522, *Jones* vs. *Tyler.*

The reason which exists for not holding the innkeeper liable in case of a horse put to pasture, does not exist here. In such case an innkeeper is subjected to no greater liability than an agister of cattle.

PARKER, J. The general principle, that an innkeeper is bound to keep safely the goods of his guest, which are in his custody, *infra hospitium,* but that he shall answer for nothing without the inn, is well settled. 8 *Co.* 63, (*Dub. ed.*) *Cayle's case.* There are exceptions, where the loss is occasioned by the servants or companions of the guest, not necessary to be farther noticed at this time.

When goods shall be said to be in the custody of the inn-

keeper, *within the inn,* is sometimes a question of difficult solution. 3 *Dyer* 266, *b, Sanders* vs. *Spencer ;* 1 *Starkie's Rep.* 249, *Farnsworth* vs. *Packwood ;* 4 *M. & S.* 306, *Burgess* vs. *Clements ;* 8 *Barn. & Cres.* 9, *Richmond* vs. *Smith.* The limits of the *hospitium,* or inn, have not been defined with precision, and must depend somewhat upon the particular circumstances of each case. In *Cayle's case* "it was resolved that if a man comes to a common inn, and delivers his horse to the hostler, and requires him to put him to pasture, which is done accordingly, and the horse is stolen, the innholder shall not answer for it." But it is said to have been held, "if the owner doth not require it, but the innholder of his own head puts his guest's horse to grass, he shall answer for him if he be stolen." *Ibid.* In that case there is a reference to a case in the Year Books, where Knivet, C. J. said, "that the innholder is bound to answer for himself, and for his family, of the chambers and stables, for they are *infra hospitium."* And it was said that " the horse which at the request of the owner is put to pasture, is not *infra hospitium."* Whether he is to be regarded as " within the inn " when placed in the pasture by the innholder without directions, or whether, it being the duty of the innholder in such case to place the horse in the stable, he is to be held liable as if he had done so, is not stated.

It is not necessary that the goods should be within the walls of the house, or of the stables, in order to be " within the inn." " Where a sleigh loaded with wheat was put by the guest into an out-house, appurtenant to the inn, where loads of that description were usually received, and the grain was stolen during the night, the innkeeper was held liable for the loss." The court said, " The sleigh with its contents was put into an out-house, appurtenant to the inn, where it had been usual for the defendant to receive loads of that description. The doors of the wagon-house were broken open, from which it may be inferred that the building was close, and the doors fastened in such a manner as to

promise security. The bags of grain, therefore, may be deemed to have been *infra hospitium*." 14 *Johns*. 175, *Clute* vs. *Wiggins*. Judge Story, referring to this case, says—" Where goods are delivered at the usual place for such goods, the innkeeper is chargeable with them, although not strictly within the inn." *Story's Bailment* 314. But the case shows that they were regarded as *infra hospitium*. Some stress seems to have been laid on the fact that the goods were placed in a building appurtenant to the inn.

In England however the doctrine has been carried farther. " An innkeeper on a fair-day being asked by a traveller, then driving a gig of which he was the owner, whether he had room for the horse ? put the horse into the stable of the inn, received the traveller, with some goods, into the inn, and placed the gig in the open street, without the inn yard, where he was accustomed to place the carriages of his guests on fair-days. The gig having been stolen from thence, held that the innkeeper was answerable." 1 *Adolph. & Ellis* 522, *Jones* vs. *Tyler*. The case was considered by the judges as " very near the distinguishing line "—" on the extreme limit." But it did not appear that the gig was so placed with the consent or even with the knowledge of the plaintiff, and this circumstance is adverted to by the court. Mr. Justice Littledale said—" On the plaintiff's inquiring whether there was room, the defendant finds room for the horse ; it is not likely that the parties understood that the gig was to be at the mercy of any one who came by. The place where it is put is the place commonly used for the purpose, on fair-days, by the defendant ; it must, therefore, as against the defendant, in this case, be taken to be part of the inn." And Mr. Justice Taunton said—" It does not appear that the gig was put in this place at all at the request or instance of the plaintiff; the place is, therefore, part of the inn ; for the defendant, by his conduct, treats it as such. If he wished to protect himself he should have told the plaintiff that he had no room in his yard, and that he would put the gig in the street, but could not be answerable for it."

Chancellor Kent, in stating the doctrine in Cayle's case, that if the owner had not directed that the horse be put to pasture, and the innkeeper had done it of his own accord, he would be responsible, says—" Perhaps this rule might admit of some limitations : for if the putting the traveller's horse to pasture in the summer season be the usual custom, as it is in many parts of the country, the consent or direction of the owner to that effect would be fairly presumed." 2 *Kent's Com.* (1 *ed.*) 458. And Judge Story, referring to this passage, remarks, that " the common usage of the country must have great weight in all such cases. In the country towns in America, it is very common to leave chaises and carriages under open sheds all night at inns ; and also to leave the stable doors open or unlocked. Under such circumstances, if a horse or chaise should be stolen, it would deserve consideration how far the innkeeper would be liable, as the traveller might be presumed to consent to the ordinary custom." *Story on Bailment* 312.

The present case finds, to be sure, that the wagon was put in the place where the loaded wagons of guests were usually placed, when they were put under shelter ; but they were doubtless usually so placed with the knowledge and assent of the guests. It is well known that loaded wagons are often left within the limits of the highway near the inn, and are usually not placed in any building or enclosed yard, unless there is a special request for it. Few inns in the country have suitable accommodations for securing property of this character in such a manner. In the present case there is not only knowledge and assent, but the plaintiff himself places the wagon in that situation. He of course could not have expected that it would be removed to another place—he made no request to that effect—and he must have known that the goods could not be secured from thieves in that place, except by a watch. Assuredly he could not have expected they would be guarded by the defendant, in that manner ; and, under such circumstances,

ought not to have expected that the defendant was to be responsible for a loss.

And as the inns in this country are not generally furnished with accommodations for the protection of the carriages of all guests who may lodge at the inn, and the custom of permitting them to remain in open yards, where they cannot be protected, but by a guard, is so universal, and well known, we think it a sound position that the assent of the traveller is to be presumed in such case, unless he makes a special request that his carriage should be put in a safe place; and that such open yard is not to be deemed a part of the inn, so as to charge the innkeeper for the loss, unless he neglects, upon request, to put the goods in a place of safety, which he is bound to do, on such request, if he have any accommodations which enable him to comply with it.

*Plaintiff nonsuit.*